Good morning. May it please the Court? My name is Claire Connors, and I represent the plaintiffs in this case. Who are the physicians that are affiliated with Pacific Radiation Oncology? Counsel, I notice that you and co-counsel have allocated time 14 and 6. That's aspirational, unless you can control it yourself, because sometimes... I understand, Your Honor. I did want to make sure that the intervening patients had the opportunity, and I did also want to reserve a couple minutes for rebuttal. Out of the 20, yes. Yes, out of the 14 that I will take. Now that the math is out of the way, I'd like to begin by making three points, one of which directly addresses the DeVoy test that the Court asked us to comment on. First, we need to make clear that the 133 patients whose protected health information is at issue before this Court are patients of the plaintiffs who had an initial consultation that happened to occur at the Queens Medical Center. These patients' information was exactly the information that Queens obtained and identified during what we have contended the unlawful investigation that occurred back in 2011. Okay, but where in your complaint can you point me to provide a basis for the relief that you are seeking? That was my concern with regard to the DeVos case, and I think the District Court relied on that in denying injunctive relief. And I'm going to jump right now into the DeVos test, because we do think it is a helpful test. I mean, essentially what I see here is a discovery dispute, and those are not normally interlocutorily appealable to this Court. There's a component of this that is a discovery dispute, and that's before the Hawaii Supreme Court. However, the relief that we sought... That's been certified to the Supreme Court. But that still doesn't solve the jurisdictional problem. I'm not sure it is jurisdictional. I think it is, and I think it is solved. The DeVos test is pretty clear in terms of setting forth that there needs to be a sufficiency of the relationship between the claims set forth in the injunction motion and the underlying claims that are down the line going to be adjudicated. But the injunctive relief that you're seeking on behalf of the doctors is very different, is it not? I mean, it's essentially we want to be reinstated to our privileges at Queen's so that we can continue to treat our patients who need the nuclear medicine facilities and so on that are only available there. That's part of it. The primary issue that we had was that the Queen's Medical Center failed to apply the bylaws, and there were two adverse outcomes that arose. Okay, but the injunction that we're now talking about is different. You want an injunction that deals with improper disclosure of patient records under HIPAA and perhaps under Hawaii's right to privacy and its constitution, and I'm having a hard time understanding why that is the same equitable relief that you were seeking when you filed the complaint on behalf of the doctors to restore their privileges. Well, I think it is not the same equitable relief that we sought initially. It's a part of our underlying complaint that we are going to eventually present to a jury. So, yes, we had to file a second injunction. But that would suggest, Ms. Connors, that you're going to be seeking damages for the wrongful disclosure by Queen's of its patient medical records to the various people that you allege have improperly seen it, even though they're covered by the protective order. And I don't see a claim for damages in the complaint seeking a violation of HIPAA. Well, actually, what we're seeking is to address the irreparable harm for which, in the very definition of irreparable harm, there are no damages, monetary damages. And this court found that when it first entertained our motion for the original injunction for HIPAA. I don't know if we're talking past one another or I'm just not getting an answer to my question, but you understand what my problem is? Absolutely. It's a different injunction that you're here on now than the one you originally asked the district court to enter. And there is no underlying claim for relief in your complaint that seeks relief under HIPAA. And yet what you want is a HIPAA injunction because Queen's Counsel wrongfully disclosed patient records. And I just don't see the link between those two. Maybe I'm being block-headed, but I see this. Perhaps, counsel, you might point to a specific allegation in the complaint upon which you rely. Maybe that would be helpful. And it is what we set forth in counts two, primarily. Count two. What page of the record is that on? Let's look at excerpts of record. And we also address this directly in our TRO motion itself. We're concerned about the precise allegation in the complaint. If you could point that to us, that would be helpful. Sure. And I'll point to excerpts of record 331 because I'd like to make a primary point first with respect to Du Bois. And I think it's the 331, for example. And which paragraph on page 331? 331, count two. And here we say... Which paragraph number? Let's see. Count two, paragraph 34, the last full sentence where we say... After the set of bylaws for the staff. Correct, because all of this emanates from the fact that the bylaws were not followed. And part of what would have occurred had the bylaws been followed is there would have been confidentiality protections for the use of this protected health information. I'm reading section 34 of the complaint, and I don't see any assertion there about patient records. Right. What we are asserting is that there were no procedural safeguards concerning the termination of the privileges. Part of the procedural safeguards would have been the confidentiality protection of these patient records. But you ask us to assume that, right? You're saying because you had these procedures established in the bylaws, they would necessarily have had to provide the protections for the patients. Is that correct? If they had followed the bylaws, there would have been two things that occurred. One would have been due process would have been afforded, and that was the first injunction. The second component would have been that this protected health information would have been subject to the confidentiality protections that the bylaws provide. Counsel, why didn't you just move the court for leave to amend your complaint to add a HIPAA claim? That would solve this whole problem. Well, because we didn't think we needed to, Your Honor, because it was sufficiently related. How we read the DeVoy test is not that it's a sufficiency of the pleading test, but that it is a sufficiency of the relationship between the claims we are asserting. Everything that has occurred now goes to, count two, goes to what happens when a medical center does not afford due process and does not afford the bylaws. Is there anywhere in your complaint where it sets out what the provisions of the bylaws include with regard to patient confidentiality? It does set forth in our complaint that they do provide certain procedural safeguards. Those procedural safeguards afford the due process. Can you point me to those allegations in the complaint, or is this the best you've got? We've got the failure to follow the Queen's bylaws, which is count two. So this is it. You're looking at 34, and in the fifth line down, procedural safeguards. That's what you're relying on. That's part of it. I'll also point the court to excerpts of record 331 where we talk about We're on 331. What's paragraph on 331? Okay, so then where we also talk about the actions of the defendants to Oh, excuse me, 330. Let me go back a page. The actions of the defendants, the defendants' actions and omissions, as set forth, have violated and will continue to violate plaintiff's rights to due process of law guaranteed under the State of Hawaii and the First Amendment. That's also count one. And it's because the due process provisions, if the bylaws had been followed, would have said you're going to have an investigation. Okay, Queen's has made allegations of conduct here. And what that entails then is the initiation of an investigation pursuant to the bylaws. And any information that Queen's believes is relevant, including the protected health information of 133 patients, is going to be protected pursuant to the confidentiality protections of the bylaws. You're asking us to assume that. It seems like you're unable to point to a specific allegation in the complaint that addresses the rights of these patients. Is that a fair statement? That is. The way we read Du Bois, and we think Du Bois is not a sufficiency of the pleading test because, again, as we've submitted, all of this is going to be evidence that we're going to submit in support of counts one, counts two, counts five, and six. But the way we read Du Bois is that it is a sufficiency of the relationship between what we've alleged in the injunction motion and a scenario like this where we have an underlying complaint, and that's why Du Bois and the adoption of it would make sense here. But you're not – I thought you told me earlier, you're not seeking damages for – monetary damages for the disclosure, right? No. We're seeking simply that there is a remedy to the violation, which in part is recognized by HIPAA, but also, as the district court found correctly in the first prong of Witcher, is also protected under more stringent protections. Well, let's go back to the original complaint. You originally complained that the doctor's privileges had been wrongfully terminated and that they were essentially being locked out of access to the only nuclear medicine operating room in Hawaii, and you're alleging essentially unfair competition that Queens is essentially trying to monopolize the market on these sorts of services. Why isn't this issue going to be adequately addressed in the sanctions motion that is still pending in the district court awaiting the outcome of this appeal? The court has found sanctionable conduct, but has deferred ruling on what sanction to impose, and presumably that issue is going to get determined once we resolve this interlocutory appeal. Right. Why doesn't that adequately address what you're asking us to do with regard to the injunctive, really? Because it doesn't address two very, very important issues that go to the irreparable harm. It doesn't address the fact that there is this list, which the district court found indisputably constitutes protected health information. That is, city files of attorneys around town. Isn't that already protected by the terms of the protective order that the district court had previously entered? No, it's not, Your Honor, because what we have here is when you get through DeVoy, and we suggest that it's a relationship of the claims test, and when you get through the standing issues, which we've argued, then you get to the point that what applies here is Hawaii law. And the importance of that is that you need express consent to utilize protected health information in litigation. And I point to the Naipo case. So what you're asking us to do is to impose a complete bar that this information cannot be used in any way because it doesn't involve litigation involving the patients. Well, we suggest that the protected, identified health information that's been disclosed, and we're limiting that to the list, which the court found was protected health information, and also to the confidential history and physicals. That information, the identified information, has to be returned because it violates Naipo. You need express consent of a non-party patient. I can handle that, but you still haven't convinced me that the current protective order that's in place is not adequate to address the disclosure problem that you're complaining about. And then it seems to me the question as to what form the sanction will take, which could, at the extreme, include exclusion of this evidence from use by Queens in its case-in-chief on its counterclaim. But we don't know that yet because the district court hasn't fashioned the remedy. We think the district court did fashion the remedy. The district court did not address the list, did not address the dissemination of these identified records. The district court limited because of the manner in which she addressed the TRO analysis, specifically did not address that harm. Well, then I'm confused because what is it that's still pending in front of the magistrate judge who's the discovery master? That's future discovery. Whether or not we can actually disclose the records that have been requested because of the extensive review that Queens has engaged in, that is still pending, and that is the discovery issue. Right, and won't that become an issue for the trial judge at some later point down the road when the parties seek, either side, seeks to use this information? Not entirely because what we've asked this court to address is the limited disclosure in this case of the list and of the identified health information. Well, let me come at it from a different way. What is it that you want us to do? What relief are you asking the Ninth Circuit for? We're asking that the list that constitutes the identified health information that was disseminated be ordered retrieved, no further disclosures in violation of NIPO be made. We ask that an accounting be made of who has seen this list, who in Hawaii has seen it, who has seen the identified history and physicals that are sitting on the server of an economist. There is no need for the defense to utilize protected health information. Do you want us to step into the discovery dispute and tell the district court how it's going to fashion the relief under the sanctions order, which it has yet to articulate? Is that what you're asking us to do? No, that's not what we're asking, Your Honor. Well, it sure sounds like it. Well, let me see if I can clarify. Can I just step in for a second? Because I share Judge Tallman's concerns, and you mentioned a minute ago, acknowledged that the patients are not mentioned in the complaint. What I'm struggling with, and I think my colleague is, is that what you're asking for seems to relate almost entirely to the patients, and yet you've not made any allegations on behalf of the patients. Admittedly, under the law, you could, and my colleague mentioned, you could have amended the complaint and done that. But it sounds like your concerns, legitimate though they are, are really in the domain of the trial court and in the evidentiary area. We have to review what's before us, and this is almost a new point. You're not purporting to represent the people who have been wronged. I'm just struggling with how we get there. Now, you've talked about the bylaws, and you've talked about due process and how inevitably this would have happened. But in order for us to have interlocutory jurisdiction on this issue, it's got to sound in the complaint what is brought up. And I think my colleague and I are both struggling with how we get there. Right, and I do understand that. And first, as to, you know, the doctors here have suffered an injury, in fact, as well. We get that. And so in terms of this, and as to what this court is addressing, it is just what protected health information has been identified and utilized in this case. It is not what additional documents can now be produced. All of that is absolutely still before the trial court. And let's assume for a minute that what they did was just awful. It was a complete violation of Hawaiian law and any number of things. It was just really bad. But you still have to have a nexus between that and what you're talking about. Your complaint is, as has been indicated, you have some doctors who believe they have been unfairly discriminated against in violation of law from being able to practice at Queens. That's one lawsuit. That's the one that's the case in chief here. But we've got this little pseudopod that's sticking out here, and it keeps changing shape, and we need to tie it in some way to what's in the complaint or we don't have jurisdiction to hear it, I don't think. Right, and I think it is. Oh, okay. For the information of both of you, your side has 4 minutes and 11 seconds left for your entire time. Thank you. I want to address what I think you were talking about in the complaint, and actually I found paragraphs 25 of the complaint, which is ER 329, and paragraph 19 of the complaint at 326, instructive, because at the last paragraph of 19 it says, in making this decision to terminate plaintiff's privileges, the board did not follow any of the constitutional legal or due process requirements provided for in both Coons v. Bylaws and applicable Hawaii law to ensure that plaintiff's substantive and procedural rights or due process were not violated, and in 25 they state plaintiffs are informed and believed in their... Paragraph 25? Yeah, paragraph 25, which is at record 329. There was not and never has been a reasonable basis for suspending the hospital privileges of patient plaintiff's physicians at QMC to standardize and achieve improved clinical outcomes, enhance patient satisfaction. The issues and concerns were never raised or discussed with plaintiffs or with any of the QMC committees. But again, counsel, with respect, it doesn't talk about the patients. It's your clients. May I answer your question because I heard them? The patients have specific rights under the QMC bylaws to privacy. Had those privacy rights been followed, the Talavera investigation, which is what led to the suspension of the physicians, would never have been allowed to occur. That's what your co-counsel said. All right. Well, you wanted the places in the complaint. We did not know about the Talavera investigation at the time the complaint was filed. And this case is distinguishable. But you didn't seek leave to amend. Well, I was not in the case, Your Honor. I represent the intervening court. I understand that. But there's a simple answer to the problem now that you've intervened, and it hasn't been done. Okay. Then let me address DeVos for a second because DeVos says that it has to be wholly unrelated and have nothing to do with the complaint. All right. You're here. I'm here. I represent the patients whose medical records I think you concede have been wrongfully accessed. I'm not conceding anything at this point. I'm trying to understand how I can square what I believe the law to be with what the district court decided when it refused to grant the injunction that you sought and determine whether or not that constituted legal error. And I have yet to hear a persuasive argument from either one of you to convince me that Judge Kobayashi was wrong. I understand, and I'm trying to provide that persuasive argument, Your Honor. But the point is that the patients could not have known about this disclosure of their information at the time the complaint was filed. They only learned about it later. The appellees have conceded that this information is central to their claims and their defenses. They did that in their brief at page, I think, 9 and 16. The injunction sought the retrieval of this information. It's been disseminated already. And the remedy of the injunction, the retrieval of this information, was not granted. And that's squarely before you. You agree that if we cannot find a nexus between the patient's rights and what is alleged taking into account what you and your co-counsel have said about the inevitable impact of the bylaws had they been followed, you agree we don't have interlocutory jurisdiction to decide this question? I agree that if you can't find a nexus, you can't. But I think that those paragraphs carry the nexus. I get that. And I wanted to cite you to one other case. You cited us to the DuBose. I'm citing you to Gates v. Wheeler. I provided copies to opposing counsel. It's a Minnesota appeal involving very similar circumstances. And copies have been provided to the clerk. Two gentlemen were in a dispute over an LLC. One accessed confidential information of the other. It had not been pled in the underlying complaint. It was not pled until after the appeal. And the court found, after distinguishing DuBose, that it involved the context of the litigation and keeping the status of quo during the litigation and was a fair ground for injunctive relief and a fair ground to affirm it on appeal. Counsel, the time for your side has expired. Thank you. We'll hear from the other side now. Thank you. Good morning, and may it please the court. My name is Paul Alston. I represent Queens Medical Center. The answer to this nexus question is conclusively revealed in the supplemental excerpts of record, page 69, where when they were briefing this injunction motion before the district court, and before they realized the trouble they would face created by the DuBose case, they wrote, quote, the merit or lack of merit of the claims and the defenses of either party is not before the court in conjunction with the preliminary injunction motion. They admitted there, and everything you've heard since then is simply trying to obscure the fact that there is, in fact, no nexus at all between the claims they presented or the relief they sought in their complaint and what they seek in this injunction. What I read that essentially as being was, look, we're here on a discovery dispute. We're not talking about the merits of our underlying claims and defenses, and that's why I asked your opposing counsel, why isn't this just a discovery dispute over which the court of appeals lacks interlocutory jurisdiction? And that's been our position since the very beginning. This is nothing more than a discovery dispute about the extent to which we can use Queen's own information as a platform for pursuing the claims for unfair competition directed at their steering activities. And we don't know the answer to that from the district court because the district court has yet to articulate what form of sanction it will impose for the violation. That's exactly right. So presumably that issue could come before us again. Perhaps it might have to await a final judgment in the case. But for all the reasons that we don't permit interlocutory appeals, why should we hear this one now? We agree you shouldn't. That's why we asked for summary affirmance, and the appellate commissioner decided to defer it to you. We think he shouldn't have, but he did. And so we're here, I think, in what is quintessentially an ongoing discovery dispute. And we don't know what the court is going to do because she has asked for guidance from the Hawaii Supreme Court. It may or may not grant that guidance. When that is known, then there will be further proceedings in front of both the district judge and the magistrate judge deciding what can be done with this information, what can be done with the information we seek in discovery, whether she's going to give it to it or not, whether it's going to be de-identified or not. Everything is in flux. Counsel, I'm curious about the Hawaii Supreme Court matter. What is before it which could have some impact on this case? Judge Kobayashi has certified two questions. The first is, may a third party who is in lawful possession of a patient's confidential medical records use or be compelled to produce those records in litigation where the patient is not a party? Those records are the same records we've been talking about. Exactly so. And that addresses both facets of the question because what the appellants seek here is an order that restricts Queens' use of its own records as well as restricting Queens' access to the records that are held by the cancer center. Do you agree, counsel, that you would want this, but do you agree that it's a matter of law that the district court in a sanctions order, if she concluded that you had in fact violated these rights, these were important, it was a serious offense, that the district court could do in the sanctions order everything that is being sought by the plaintiffs in this appeal? Not that they would. Not that she would, not that she should, but I think in theory the district court has broad powers under Rule 37. I don't think they're appropriately exercised here for many reasons. But the point is the district court has the power under Rule 37 and perhaps others to give the patients really and indirectly the plaintiffs the relief that they seek if we don't have jurisdiction. I would concede that in theory that's possible. Counsel, is there any Rooker-Feldman issue here or a suggestion that we defer pending the Hawaii Supreme Court's decision? Well, I think the guidance that the – actually you should defer depending both the Hawaii Supreme Court's decision and, as Judge Tolman indicated, the development of this discovery dispute and the district court's resolution of it in the proceedings below. Judge Kobayashi has administratively closed the case. She's vacated the trial date, all awaiting further guidance from the Supreme Court, which may or may not give it, frankly, because they've said they'll take briefing but they haven't decided whether they're going to answer the certified questions. And then once all that develops, then we'll go back to the court and she'll decide what she's going to allow us to look at. Wait a minute, she administratively closed the case? Yes, Your Honor. That's customarily done in this district when there is something that's going to cause a long hiatus or nothing. She doesn't enter a long stay, then. She doesn't enter a long stay. I think it has something to do with keeping statistics. I'm sure it has. Subject to re-opening at the appropriate time. Yes. I'm in shock. I know. And let me go to the point of the awareness of the discovery. If you look at Docket Entry 29, which was filed very early in the case in February 2012, there is a version of the chart, a portion of the Talavera chart, which lists patients by number, describes their diagnosis, their insurance status, their zip code, et cetera, et cetera. The plaintiffs have known, and the patient who originally sought to intervene knew, that Queens had this information. It was using it. It was using it not only for its administrative decision, because under HIPAA it's entitled to use information for health care planning, and that includes business purposes, as well as the discovery of fraud and abuse. And they didn't do anything. They didn't amend the complaint. They didn't supplement the complaint. They've done nothing. Do I understand correctly that the hospital's use internally of these records, your client's use of those records to make a determination with respect to the doctors is not what's at issue here. It's the publication, if you will, of these records in the court files that made them public. Is that the real issue here? I'm not saying what I know the plaintiff would like to bar the use of your internal investigation, if you will, that led to the termination. But as a practical matter, speaking on behalf of the patients, I gather there's no objection to the hospitals having the record, no objection to the hospitals being able to examine the records. It's the publication that's the big issue. Is that right? I wouldn't say that, Your Honor. You wouldn't? I wouldn't. I mean, that's clearly part of it. Although the publication and the record was a very unfortunate circumstance, and it lasted for 72 hours. Nobody saw it. It was the tree falling in the proverbial forest. But I think if you look at the relief they've requested in the injunction and the subsequent intervention mirrors it, what they're asking for is an embargo on any use by anybody, including Queens, of this information for any purpose. And that's question two that's been certified to the Hawaii Supreme Court, is it not? That's it. Whether it's even permissible to use these records in non-identifiable form. Yes. And, unfortunately, the NYPO case and the COAN case all are very different from this case in the sense that they are one patient. The concept of de-identification is somewhat hard to understand in that context. Here we have 132 patients. We are not seeking, do not want, do not need, will not use, identifiable information in the course of presenting our claims or our defenses at trial or in the motions leading up to the trial. We are content with de-identified information that describes a very limited subset of what's in or includes a very limited subset of what's in the records held by the cancer center. But it is possible that the Hawaii Supreme Court will say even for that purpose you can't use it. It's possible they could say that. It's certainly possible. Anything further, counsel? No, I don't have anything further. No further questions here. Thank you very much. The case just argued will be submitted for decision. If I could, there's the Gates case that Mr. Hyatt brought up at the last minute. That is a case where the plaintiff did amend their complaint. And having amended the complaint, the appellate court said, well, this has the nexus. And so I think the questions you asked about that were entirely apt. That's all I have here. You're sure? Yeah, I'm sure. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Tallman, Smith